**Kenneth LUNDY, Plaintiff-Appellant,**

**v.**

**UNION CARBIDE CORPORATION, a New York corporation, and Harrisons & Crosfield (Pacific), Inc., a California corporation, Defendant-Appellee.**

**No. 81–3221.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1982.

Decided Dec. 28, 1982.

Kathryn Logan, Green & Logan, Salem, Or., for plaintiff-appellant.

Steven K. Blackhurst, Lindsay, Hart, Neil & Weigler, Paul R. Duden, Tooze, Kerr, Marshall & Shenker, Portland, Or., for defendant-appellee.

Before CHOY, TANG and BOOCHEVER, Circuit Judges.

CHOY, Circuit Judge:

Plaintiff Kenneth Lundy appeals a summary judgment dismissing his diversity action against Union Carbide Corporation and Harrisons & Crosfield, Inc., for injuries allegedly sustained while working with asbestos products that were manufactured and distributed by the defendants. The sole issue before us is whether the district court acted properly in finding that Lundy's action was barred by Oregon's two-year statute of limitation.[1] Because Lundy presented evidence showing a genuine issue of material fact concerning the time the action accrued, we reverse the judgment and remand the cause for trial.

Lundy worked for the Borden Chemical Company in Springfield, Oregon, between 1964 and 1977. The complaint alleged that Lundy contracted asbestosis during this time due to his constant on-the-job exposure to asbestos manufactured by Union Carbide Corporation and distributed by Harrisons & Crosfield, Inc.[2]

Lundy began having some chest pain and breathing difficulty in January 1975. An X ray taken at the time revealed some "pleural density" in the chest. Several months later, Lundy was hospitalized for respiratory problems, and some fluid had to be drawn off his chest cavity. Dr. Vitums, a chest specialist, remarked at the time that Lundy had some pleural scarring not present before. Lundy was then treated for tuberculosis, as he had reacted positively to a skin test. Dr. Vitums saw Lundy again on October 27, 1975. According to the doctor's report, Lundy asked then whether there could be a relationship between the pleural scarring and his exposure to asbestos 5 to 10 years previously. However, the doctor apparently felt that Lundy's problems could have been due to smoking and exposure to formaldehyde fumes.[3]

In December 1975, Lundy retained an attorney to investigate the feasibility of filing a claim for occupational disease. The attorney wrote to Dr. Vitums requesting a diagnosis of Lundy's disease. Dr. Vitums responded that exposure to asbestos could cause pleural scarring but that such a connection could not be determined without a pleural or lung biopsy. The doctor recommended against a biopsy, however, because

---

1. The defendants also argue that Lundy's notice of appeal was not timely filed. This court first construed the late filing as a motion for extension of time. The defendants argued that this was improper in light of *Pettibone v. Cupp,* 666 F.2d 333, 335 (9th Cir.1981). On February 25, 1982, the motions panel reconsidered its original order. It then withdrew the first order and entered a second order holding that the arrival of Lundy's notice of appeal at the former address for the district court clerk within the specified time period constituted timely receipt by the district court and vests this court with jurisdiction over the appeal under *Aldabe v. Aldabe,* 616 F.2d 1089, 1091 (9th Cir.1980). Because the record supports the motions panel's determination that the receipt at the former address should be considered constructive receipt, we decline to reconsider the motions panel order.

2. Borden Chemical Company is not a defendant in this action.

3. Dr. Vitums' medical log for that date states in relevant part:

He relates some new history and the possibility of these chest x-ray changes, i.e., that of some asbestos exposure five to ten years ago in his work. It was used as a catalyst. He refuses chest x-ray follow-up today. The second problem is that of emphysema and exposure to formaldehyde fumes at his work. He apparently has stopped smoking now, at least this is what he tells me. In the last week the formaldehyde fume exposure has caused him more shortness of breath and wheezing. Indeed today there is the prolongation of the expiratory flow with end expiratory wheezing heard. If indeed this patient has stopped smoking he should improve without any medication just due to discontinuance of exposure to the formaldehyde fumes.

of Lundy's near-normal pulmonary functioning and the "lack of definite documentation of asbestosis." Dr. Vitums concluded by noting that Lundy's symptoms could reflect "numerous causes." The attorney then wrote to Lundy, stating that the doctor's report did not establish the cause-effect relationship necessary to support a claim. The letter indicated that a copy of Dr. Vitums' report was enclosed, but Lundy denies having received it. Lundy further denies having heard from either the attorney or Dr. Vitums that the pleural scarring could have been caused by his exposure to asbestos. Lundy claims that the first time he became seriously aware of asbestos-related medical problems was after a diagnosis by Dr. Dalgren in September 1977 that Lundy might have been suffering from ammonia and/or asbestos disease. In January 1978 the diagnosis was refined to asbestosis only. Lundy filed his complaint in July 1979.

■ The sole issue in this appeal is whether the district court properly applied the governing meaning of the word "accrued" in Oregon's two-year statute of limitation [4] to the facts of this case in granting a summary judgment dismissing the plaintiff's case on the limitation ground. Although this is a diversity action and Oregon's statute of limitation applies, the federal rules govern the use of summary judgment. *Bieghler v. Kleppe,* 633 F.2d 531, 533 (9th Cir.1980). Fed.R.Civ.P. 56(c) provides that summary judgment is proper if no genuine issue concerning any material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party has presented evidence that would entitle it to a directed verdict at trial, the burden shifts to the opposing party to present facts controverting the moving party's evidence. Fed.R.Civ.P. 56(e); *British Airways Board v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). In deciding whether a genuine issue of fact exists, the court must view the evidence in the light most favorable to the party opposing the motion. *Poller v. CBS, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Bieghler v. Kleppe,* 633 F.2d 531, 533 (9th Cir.1980).

In granting summary judgment for the defendants, the district court found language from the Oregon Supreme Court's decision in *Schiele v. Hobart Corp.,* 284 Or. 483, 587 P.2d 1010 (1978), to be dispositive. In that case, the Oregon Supreme Court held that a claim for infliction of occupational disease begins to accrue within the meaning of Oregon's statute of limitation "when a reasonably prudent person associates his symptoms with a serious or permanent condition and at the same time perceives the role which the defendant has played in inducing that condition."[5] *Id.* at 489, 587 P.2d at 1014. Applying the *Schiele* language to the facts of this case, the district court then concluded that Lundy's claim must be barred as a matter of law, since the limitation period on Lundy's claim began to run in December 1975 when Lundy "knew that he had a severe permanent lung condition" and "knew or should have known that asbestos was one of the probable causes of that condition." We find that the district court misapplied the relevant accrual rule of *Schiele* to the facts of this case.

■ Lundy sued for permanent injury due to asbestosis. It seems to us that Lundy presented sufficient evidence to permit a trial on when he knew he had a permanent

---

4. The applicable Oregon statute of limitation states, in part, "[A]ctions shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued," and "[a]n action ... for any injury to the person ... shall be commenced within two years." Or.Rev.Stat. §§ 12.010, 12.110(1) (1981).

5. Similar interpretations of the word "accrued" in Oregon's statute of limitation have been applied to cases involving other tort claims. *See, e.g., Dowers Farms, Inc. v. Lake County,* 288 Or. 669, 681, 607 P.2d 1361, 1367 (1980) (action under Tort Claims Act); *United States Nat'l Bank of Oregon v. Davies,* 274 Or. 663, 669–70, 548 P.2d 966, 968–70 (1976) (legal malpractice); *Berry v. Branner,* 245 Or. 307, 315–16, 421 P.2d 996, 999–1000 (1966) (medical malpractice).

injury due to asbestosis caused by the defendant. We disagree with the district court's finding that Lundy knew in December 1975 he had a "severe permanent lung condition."

The district court based its finding principally on the following excerpts from Lundy's deposition testimony pertaining to the time he first experienced symptoms in January 1975:

Q. They did an X-ray, didn't they?

A. They did several of them.

Q. Right. And they found you had some type of an abnormality in the lower two-thirds on the right side of your chest, what the radiologist calls apparent pleural thickening. Is that what you're talking about?

A. I'm not sure what the language was at that time. I wouldn't—I have to assume that this is what—what was written. I don't recall it from memory.

Q. I'm not asking you about the technical thing.

A. Pleural density in the lower two-thirds of the right side of the chest. Areas of apparent pleural thickening are demonstrated.
I think this is—I have no reason to doubt that's what it is.

Q. And that's when you became aware that you had some permanent changes in your chest X-ray that were showing up, right?

A. That's the first I knew that—in fact I think I asked him if it was a permanent thing and I think they informed me that it was some sort of a—wasn't something that was going away next week.

We feel that the district court interpreted Lundy's testimony out of context in asserting it as the basis for charging Lundy with knowledge of the permanency of his condition in December 1975. Nothing in the record remotely suggests that Lundy was apprised during the relevant period that his condition was permanent. To the contrary, Dr. Vitums' medical report in October 1975 indicated that the plaintiff's condition "should improve without medication." Under these circumstances, it cannot be said as a matter of law that Lundy knew he had a permanent condition at the time fixed by the district court.[6]

Even if the plaintiff could be charged with knowledge of the permanency of his condition in December 1975, the summary judgment must be reversed for another reason. The record amply reflects the possibility that Lundy did not know what was causing his illness. Lundy had promptly sought medical attention from the beginning. By December 1975, after seeing several doctors, all that Lundy knew with any degree of certainty was that his chest X rays revealed some pleural scarring that the doctors attributed to tuberculosis or pneumonia, among other causes. Lundy himself raised the possibility that the scarring could have resulted from his exposure to asbestos, but Dr. Vitums apparently did not think this probable. Viewed in the light most favorable to Lundy, therefore, the evidence supports an inference that in December 1975 Lundy had no real knowledge of the cause of his medical problems.

We therefore hold that the district court's grant of summary judgment based on the limitation ground was improper in view of the factual dispute as to whether Lundy knew or should have known in December 1975 that his permanent condition was caused by asbestos. *See Williams v. Bor-*

---

**6.** Although our conclusion here rests on the federal rules governing the use of summary judgment, it is also very much in spirit with *Schiele.* The plaintiff in that case suffered for *two years* before she was diagnosed as suffering from exposure to polyvinyl chloride fumes on the job. 284 Or. at 485–86, 587 P.2d at 1011–12. Nearly two years after that diagnosis, she filed suit. *Id.* at 486, 587 P.2d at 1012.

Nevertheless, the Oregon Supreme Court ruled that summary judgment was improper in that case because it could not be said "as a matter of law that a reasonably prudent person would have apprehended more than two years prior to the commencement of plaintiff's action that she was being seriously or permanently injured." *Id.* at 491, 587 P.2d at 1014.

*den, Inc.,* 637 F.2d 731, 738 (10th Cir.1980) ("where the issue of limitations involves determinations [of when a claim begins to accrue], summary judgment cannot be granted unless the evidence is so clear that there is no genuine factual issue and the determinations can be made as a matter of law.").

Reversed and Remanded.