**Richard OROZCO, Plaintiff–Appellee,**

v.

**UNITED AIR LINES, INC., Defendant–Appellant.**

**Nos. 88–2923, 88–15697.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1989.

Decided Oct. 16, 1989.

William J. Dritsas and Tyler A. Brown, Seyfarth, Shaw, Fairweather & Geraldson, San Francisco, Cal., Kathleen Katovich, United Airlines Counsel, Chicago, Ill., for defendant-appellant.

David H. Fielding, Bushnell, Caplan & Fielding, San Francisco, Cal., for plaintiff-appellee.

Before CHOY, ALARCON and LEAVY, Circuit Judges.

PER CURIAM:

United Airlines, Inc. ("United") filed these consolidated appeals from the district court's entry of summary judgment in favor of Richard Orozco ("Orozco") and from the district court's order awarding Orozco attorney's fees and costs. 698 F.Supp. 196. Orozco, a former employee of United, brought this action in California Superior Court alleging breach of contract and related claims arising from United's failure to pay additional benefits Orozco claimed were due under United's Termination Incentive Program ("TIP").

United removed the action to federal district court on the basis of diversity jurisdiction, 28 U.S.C. § 1332 (1982).[1] The parties and the district court, however, treated the action as arising under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. §§ 1001–1461 (West 1985 & Supp.1989). The district court held that United's decision to reduce its payment to Orozco under TIP was arbitrary and capricious and that Orozco had not waived his right to receive additional benefits by accepting the reduced amount offered by United. The district court then awarded Orozco attorney's fees and costs. We reverse.

### FACTS

In the fall of 1983, United instituted and funded TIP as an employee benefit program to encourage voluntary reduction in staffing. Employees who opted to participate in TIP received one lump sum cash settlement which was calculated on the basis of employment status. Regular, full-time employees received a lump sum equal to 100 percent of their annual pay; regular, part-time employees received 50 percent of

---

1. 28 U.S.C. § 1332 was recently amended to increase the jurisdictional amount in diversity cases to an amount exceeding $50,000. *See* Pub.L. No. 100–702, § 201, 102 Stat. 4642, 4646 (1988). The amendment does not affect this controversy.

their annual pay. United employees received notice of the availability of TIP benefits through a brochure which set forth the guidelines under which employees would receive TIP benefits.

Orozco began working for United in 1973 as a full-time Customer Service Clerk. In 1976, he was promoted to a position as a full-time Customer Service Agent. He held this position until September, 1980, when he was furloughed as part of a reduction in work force by United. He was recalled from furlough on August 29, 1983, and resumed work as a full-time Customer Service Agent.

Prior to returning to work, Orozco requested that he be placed on part-time status at United's San Jose facility upon his return because he wanted to attend school in San Jose while he worked. There were no appropriate part-time positions available so Orozco returned to work as a full-time employee. In September, 1983, Orozco again asked to be transferred to part-time status. Because United still had no openings, Orozco's status remained unchanged but, pursuant to United's policy, the company kept Orozco's request on file until an opening as a part-time employee became available or Orozco withdrew his request.

On October 13, 1983, Orozco suffered a back injury and was placed on disability leave. On November 19, 1983, United approved Orozco's request for a change to part-time status and implemented the transfer. Orozco was still absent from work due to his back injury but United approved the change in status to preserve the part-time position for him. On or about November 19, Orozco's supervisor notified Orozco by telephone that if Orozco could get medical clearance, the part-time status transfer was approved. A few days later, Orozco picked up a copy of his transfer form which was marked "accepted" by United.

On January 15, 1984, Orozco was placed on extended illness status because his sick leave eligibility had expired. In April 1984, Orozco underwent a medical examination and was authorized to return to work subject to certain medical restrictions. When Orozco informed his supervisors of the medical restrictions, the supervisors told him that he would be unable to work as a Customer Service Agent given his physical limitations. At that time, Orozco had the option to remain on extended illness status for up to two years. Instead, he chose to participate in TIP.

Orozco executed his first TIP election form on March 30, 1984. Previously, United had notified Orozco that the company intended to pay Orozco benefits on the basis of part-time status because Orozco was a part-time employee as of the TIP eligibility date of December 31, 1983. Orozco wrote on the form that his signature did not constitute a waiver of any claim for full-time benefits under TIP. United's personnel department refused to accept the modified election form. Orozco executed a second form without the modification on April 18, 1984, and initiated each of the explanatory paragraphs setting forth the terms under which he accepted TIP benefits. When he signed the second form, Orozco gave United a letter from Orozco's attorney notifying United that Orozco intended to pursue his right to full-time benefits. Orozco received $14,232 from United.

## STANDARD OF REVIEW

This court reviews de novo the grant of summary judgment. *Bonner v. Lewis,* 857 F.2d 559, 561 (9th Cir.1988). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the party opposing the motion, the court finds that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Lundy v. Union Carbide Corp.,* 695 F.2d 394, 396 (9th Cir.1982). The district court's determination regarding attorney's fees is reviewed under an abuse of discretion standard. *Blanton v. Anzalone,* 760 F.2d 989, 992 (9th Cir.1985).

## DISCUSSION

I. *Applicability of ERISA*

The parties and the district court treated this action as arising under ERISA

even though the causes of action in Orozco's complaint were based on state law. ERISA clearly governs this action. ERISA applies to any "employee benefit plan" established or maintained by an employer engaging in commerce. 29 U.S.C. § 1003 (1982). The TIP benefit is very similar to severance pay, which has been included within the category of employee welfare benefits to which ERISA applies. *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1502–03 (9th Cir.1985); *see also Ridens v. Voluntary Separation Program*, 610 F.Supp. 770, 775–76 (D.Minn.1985) (Voluntary Separation Program set up by Texaco was an employee benefit plan subject to ERISA). United allegedly failed to comply with ERISA's procedural requirements when it set up the TIP plan. Yet, compliance with ERISA's procedural requirements for setting up an employee benefit plan is not a prerequisite to ERISA coverage. *Scott*, 754 F.2d at 1503–04. TIP is an employee benefit plan and, therefore, ERISA preempts Orozco's state law causes of action for breach of contract, bad faith breach of contract, and failure to pay wages pursuant to Cal.Labor Code § 203 (West Supp.1989). 29 U.S.C. § 1144 (1982 & Supp. IV 1986); *see also Scott*, 754 F.2d at 1504 (ERISA preempts "claims brought under state-law doctrines that do not explicitly refer to employee benefit plans ... when the claims arise from the administration of such plans.").

Orozco's suit falls under section 502(a)(1)(B) of ERISA, which authorizes civil actions by plan participants to recover benefits due under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B) (1982). Thus, to uphold the district court's entry of summary judgment in favor of Orozco, we must determine whether Orozco was entitled to part- or full-time benefits under the terms of the plan.

## II. *United's Decision to Grant Part–Time Benefits*

United determined that under the TIP plan, Orozco was entitled only to part-time TIP benefits because Orozco's employment status as of December 31, 1983, was listed as part-time in United's employment records. The district court held that United's determination was an arbitrary and capricious interpretation of the plan's terms.

### A. *Applicable Standard of Review*

Before the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*, — U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), a plan administrator's decision to deny benefits was reviewed under an arbitrary and capricious standard in suits under 29 U.S.C. § 1132(a)(1)(B). That standard required that the administrator's interpretation of a plan be upheld unless "arbitrary, capricious, made in bad faith, not supported by substantial evidence, or erroneous on a question of law." *Malhiot v. Southern Calif. Retail Clerks Union*, 735 F.2d 1133, 1135 (9th Cir.1984), *cert. denied*, 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985).

In *Bruch*, the Supreme Court held that benefit determinations are to be reviewed under a de novo standard in section 1132(a)(1)(B) suits, unless the terms of the benefit plan give the administrator of the plan discretionary authority to determine eligibility for benefits. 109 S.Ct. at 956. Under de novo review, the court independently construes the terms of the plan document in light of other evidence of the parties' intent to determine whether the administrator's decision regarding benefits was proper. *Id.* at 955.

### *Retroactive Application of Bruch*

Since the TIP brochure does not expressly grant discretionary authority to United, the de novo standard would apply here. United contends, however, that *Bruch* should not be applied retroactively to this case or to any other case involving a decision by an administrator which predates the decision in *Bruch*. To determine whether a case should be applied only prospectively, this court must apply the three-factor test adopted by the Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The case must (1) establish a new principle of

law, either by deciding an issue of first impression or by overruling clear past precedent; (2) state a rule for which retroactive application would retard more than further the rule's operation in light of its prior history, purpose, and effect; and (3) avoid injustice or hardship if applied only prospectively and produce substantial inequitable results if applied retroactively. *Id.* at 106–07, 92 S.Ct. at 355–56; *see also Austin v. City of Bisbee*, 855 F.2d 1429, 1432–33 (9th Cir.1988).

In this case, the first factor is met. *Bruch* substantially changes the former standard of review for benefit determinations and thus establishes a new rule of law. The second factor, however, is not met. United makes a conclusory argument that applying de novo review retroactively will not further the purposes of the standard and will retard its operation because the validity of decisions made years ago under a deferential standard of review will be cast into doubt and subject to reevaluation. The Supreme Court already has rejected arguments that the de novo standard should not be adopted because it would result in increased litigation and administrative costs and would deter employers from creating benefit plans. *Bruch*, 109 S.Ct. at 956. Thus, such arguments have little weight in determining whether to give the standard retroactive operation.

In addition, part of the Supreme Court's purpose in replacing the arbitrary and capricious standard with de novo review was to remedy a situation in which participants in ERISA benefit plans were receiving less protection than they had been afforded prior to adoption of ERISA. *Id.* Before ERISA's enactment, courts reviewed denials of employee benefits under principles of contract law and interpreted the terms of the contract de novo unless final authority to determine eligibility for benefits was vested in the employer. *Id.* at 955. The purpose of de novo review is to provide greater assurance that employees will get the benefits to which they are entitled under the written terms of plan documents. Applying de novo review retroactively would further more than retard this remedial goal.

Finally, with respect to the third *Huson* factor, United first argues that retroactive operation of the de novo standard will expand the scope of its liability under TIP because this court will be able to substitute its judgment for the judgment of United's plan administrator. De novo review, however, does not increase United's substantive liability under the plan's terms; it increases the chance that this court may disagree with United's interpretation of the plan. United cannot argue that it will suffer substantial injustice because it was counting on the fact that we would review with greater deference an interpretation of the plan which may not actually be supported by the plan's terms or the facts regarding the parties' intent and which may place limits on benefits provided for under the plan.

Second, United argues that it is unfair to impose a higher standard of review at this point in the litigation because United has conducted its defense under the assumption that the arbitrary and capricious test would apply. United states that it might have been more willing to settle this lawsuit had it known its benefit determination was going to be subject to greater judicial scrutiny. Yet, since retroactive operation is the rule and prospective operation the exception, litigants who decide not to settle a lawsuit always take the risk that changes in the law may occur during the course of the suit. In addition, the cases making decisions nonretroactive generally have involved a greater level of injustice, such as a change in the statute of limitation which completely bars the plaintiff's cause of action, *see Duncan v. Southwest Airlines*, 838 F.2d 1504 (9th Cir.1987), a change in the rules regarding preservation of issues for appeal which would deprive the litigant of the right to appeal, *United States v. Givens*, 767 F.2d 574 (9th Cir.), *cert. denied*, 474 U.S. 953, 106 S.Ct. 321, 88 L.Ed.2d 304 (1985), or a change in the law which would expand the scope of potential criminal liability, *United States v. Goodheim*, 651 F.2d 1294 (9th Cir.1981). United's arguments on the issue of substantial injustice are not sufficient to warrant mak-

ing *Bruch* apply only prospectively. Thus, we conclude that *Bruch* applies retroactively because the second and third factors of the *Huson* test are not met.

### B. *Application of the Bruch Standard*

United contends that the TIP plan clearly sets December 31, 1983, as the date on which status would be determined for purposes of calculating benefits. United's decision to calculate TIP benefits as of status on December 31, 1983, is supported by the terms of the plan. The relevant clause in the TIP brochure, which is the only written documentation of the TIP plan presented in the record, states,

Q. Who is eligible to participate?

A. Any U.S. or Canadian active, regular full or regular part time employee who is in a permanent position inob groups 1 through 19 as of 12/31/83 and who has completed at least five years of service (date of employment) at effective date of Program election. There will be no exceptions.

One possible interpretation of this clause is that it sets forth only the date on which eligibility for benefits is determined and says nothing about the date on which status for calculating benefits is determined. Under that interpretation, however, the inclusion of the date, December 31, 1983, adds nothing to the eligibility requirements that is not already there.

United established TIP to provide an incentive for highly paid clerical employees to quit voluntarily so that United could hire replacements in the future at lower rates of pay. Thus, TIP's target group was highly paid employees in clerical jobs at the lower end of the employment scale. To be eligible for TIP at the time of election, the employee had to have five years of service

and be an active, regular, full- or part-time employee with a permanent position in the relevant job groups. There was no need for United to require employees to show, in addition, that they were active, regular, permanent, part- or full-time employees on December 31, because virtually no one who met the eligibility requirements on the election date would not have met the requirements on December 31 and vice versa.[2] Since the inclusion of the earlier date imposed no additional eligibility requirements that would not need to be met on the election date, United must have intended the date to have some other significance. To give the date any meaning in the quoted clause, therefore, we must conclude that December 31, 1983, was the date on which United intended, for purposes of administrative convenience, to determine status for calculating the amount of benefits.

The question then is whether Orozco should have been regarded as a part- or full-time employee as of December 31, 1983. United chose to determine employment status on the basis of its internal computer records. Under the arbitrary and capricious standard, that decision would be given substantial deference if it was deemed reasonable. Under *Bruch*, however, we look de novo to the evidence of Orozco's status as of December 31, 1983.

■ We agree with United that Orozco was a part-time employee on December 31, 1983, and that United properly considered Orozco's part-time status in calculating his benefits under TIP. Orozco requested a transfer to a part-time position prior to August 1983. United approved and implemented the transfer on November 19, 1983. On or about the same day, Orozco received a phone call from his supervisor, notifying

**2.** It is unlikely that any temporary employee who might have become permanent after December 31, 1983, would have had five years of service with the company. It is also unlikely that United intended to recall any employees from inactive to active status during this period since United was trying to get employees to terminate their employment voluntarily through TIP. Thus, though it is conceivable that an employee with five years of previous service might have been called back from furlough to active status after December 31, 1983, and would not be eligible for benefits, United probably was not contemplating such a situation when it created TIP. Similarly, it is unlikely that United contemplated the highly unusual situation in which an employee with five years of service might have been demoted from a higher job group to a position in job groups 1 through 19 after December 31, 1983, and would not be eligible for benefits.

Orozco that he could return to work part-time as soon as he obtained a medical release. A few days later, Orozco picked up the transfer forms.

Orozco's transfer became effective on November 19, 1983, when United accepted Orozco's transfer request and implemented the transfer. Orozco never withdrew his transfer request prior to November 19, 1983. Moreover, Orozco's failure to object to the transfer when he received the telephone call from his supervisor and again when he picked up the transfer forms indicates that he was satisfied that United was responsive to his transfer request.

Orozco argues that the transfer did not become effective in November 1983, because his supervisor conditioned the transfer on Orozco's obtaining a medical release. Since Orozco never obtained the release and never worked part-time, Orozco argues, the transfer never became effective. We reject this argument. Orozco's supervisor conditioned Orozco's *return to work* on Orozco's ability to obtain the release, not Orozco's part-time position. It makes no sense for Orozco's supervisor to deny Orozco the part-time position if Orozco did not secure the release, but, in that case, to allow Orozco to retain his full-time position. Clearly Orozco would need the release to return to work to a full-time *or* a part-time position. We thus conclude that the transfer was effective immediately on November 19, 1983, and that the supervisor conditioned Orozco's return to work, not the transfer itself.

Since Orozco was a part-time employee on the date United earmarked for the calculation of TIP benefits, and it is undisputed United paid Orozco the amount Orozco was entitled to as a part-time employee, Orozco was adequately compensated under TIP. We therefore do not reach the issue of whether Orozco waived any further benefits by accepting the compensation offered by United sometime in March 1984 and in subsequent dates: Orozco was not entitled to benefits in addition to the ones he received.

III. *Attorney's Fees*

The district court awarded Orozco attorney's fees pursuant to 29 U.S.C. § 1132(g)(1), after concluding that United "acted with a fair degree of culpability" when it denied Orozco full-time benefits, and that the relative merits of the parties' positions favored Orozco. Since we hold that United acted reasonably under TIP in granting Orozco part-time benefits, and that the merits of the parties' position favors United, we are left with the "firm conviction" that the district court "made a clear error" in granting the award. *See Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir.1980). Accordingly, we remand and direct the district court to vacate the attorney's fees award.

REVERSED AND REMANDED.