Donald F. BOGUE, Plaintiff,

v.

AMPEX CORPORATION, and
Allied–Signal, Inc.,
Defendants.

No. C–89–0682 CAL.

United States District Court,
N.D. California.

Oct. 26, 1990.

Bruce H. Munro, Vivian L. Kral, Thoits, Love, Hershberger & McLean, Palo Alto, Cal., for plaintiff.

John R. Leflar, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendants.

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT

LEGGE, District Judge.

Plaintiff Donald Bogue brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, claiming that defendants wrongfully denied him severance benefits, breached their fiduciary duties, and interfered with his protected rights. Defendants have moved for summary judgment on all claims alleged against them in the first amended complaint. Having considered the record, the relevant authorities, the moving and opposing papers, and the arguments of counsel, the court concludes that there is no genuine issue of material fact and that summary judgment should be granted in favor of defendants.

### I.

The following facts are undisputed: Plaintiff seeks severance benefits under the terms of the "Allied–Signal/E & I Sector Special Compensation Program for Designated Key Executives." This program was established by Allied–Signal in November 1986 in conjunction with its proposed sale of Ampex Corporation, a wholly owned subsidiary. Plaintiff was an employee of Ampex. The program included severance benefits if:

> Neither Allied–Signal nor the Buyer [of Ampex] offers you "substantially equivalent" employment and your employment is terminated.

Allied–Signal sold Ampex to Newhill Acquisition Corporation in May 1987. Pursuant to that sale agreement, Ampex assumed the financial obligations for the severance portion of the program, and Allied–Signal remained the plan's administrator.

Ampex was reorganized in November 1987. Prior to the reorganization, plaintiff held the position of Vice President and General Manager of the Audio–Video Systems Division of Ampex. After the reorganization, Ampex offered plaintiff the position of Vice President of Marketing, Sales & Service. Plaintiff accepted the new position. However, he expressed reservations about whether the new position was substantially equivalent to his prior position. Plaintiff resigned his new position in January 1988, because he then believed that the position "consists of significantly diminished responsibility." He made a claim to Allied–Signal for the severance benefits under the program. In March 1988, Allied–Signal denied his claim, finding that plaintiff's new position was substantially equivalent to his former position. Plaintiff's claim was reconsidered by Allied–Signal, and was again denied.

### II.

Plaintiff then filed this action in state court. Defendants removed the case to this court on the ground that plaintiff's severance claims are governed by ERISA, and are therefore within the original jurisdiction of this federal district court. On plaintiff's motion to remand, this court ruled that the severance plan was governed by ERISA and that removal was proper. The court also dismissed the complaint, with leave to amend to replead the claims under the standards of ERISA. Plaintiff then filed the present amended complaint,

and this summary judgment motion followed.

The amended complaint contains four claims: the first is for $512,300, plus interest, in severance benefits and for attorneys fees; the second alleges that Ampex is estopped from denying severance benefits to plaintiff; the third alleges that Ampex interfered with plaintiff's protected benefit rights in violation of 29 U.S.C. § 1140; the fourth alleges breach of fiduciary duties in violation of 29 U.S.C. § 1109.

### III.

Plaintiff's first claim, for the recovery of benefits under the plan, is based on 29 U.S.C. § 1132(a)(1)(B) (1985).[1] This section creates a cause of action for the recovery of benefits "due to him under the terms of his plan." The resolution of plaintiff's claim therefore turns on an interpretation of the plan provisions which define the severance benefits.

### A.

The first and critical question is the standard for this court's review of Allied–Signal's decision to deny the severance benefits to plaintiff. Plaintiff contends that he is entitled to de novo review of Allied–Signal's decision. Defendants maintain that Allied–Signal's decision can be reviewed only for an abuse of discretion. Both parties agree that the U.S. Supreme Court's decision in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) is controlling.[2]

ERISA does not itself specify the standard for a district court's review in actions under § 1132(a)(1)(B) challenging the determinations of benefit eligibility by a plan administrator. *Firestone*, 489 U.S. at 109, 109 S.Ct. at 953. To fill this gap, the Supreme Court adopted a standard of review from the principles of trust law. *Id.* at 954. Those trust principles require a deferential standard of review when a trustee exercises powers that are discre-

tionary. *Id.* Accordingly, the *Firestone* court said:

> [A] denial of benefits under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*Id.* 489 U.S. at 115, 109 S.Ct. at 956.

■ Therefore, the question becomes whether this plan vests in Allied–Signal the discretion either to settle disputed eligibility questions or to construe doubtful provisions of the plan. *De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1186 (4th Cir.1989); *Kunin v. Benefit Trust Life Ins. Co.*, 898 F.2d 1421, 1424 (9th Cir.1990), *amd.*, *reh'g denied*, 910 F.2d 534 (9th Cir.1990). This court is required to construe the plan in light of its language, "all the circumstances," and other manifestations of the parties' intent. *Firestone*, 489 U.S. at 112–113, 109 S.Ct. at 955–956. If Allied–Signal is entitled to exercise discretion under the plan, its decision to deny plaintiff's benefits may be disturbed only upon a showing of a procedural or a substantive abuse of that discretion. *Johnson v. Trustees of W. Conf. of Teamsters Pension Trust Fund*, 879 F.2d 651, 654 (9th Cir.1989); *Firestone*, 489 U.S. at 111, 109 S.Ct. at 954.

### B.

Defendants contend that the plan gives Allied–Signal discretionary authority both to determine eligibility for benefits and to construe the plan's terms. Plaintiff responds that the plan only designates the entity that is to determine employee claims and that, under *Firestone*, this is insufficient to confer discretion on the administrator.

The language of the plan provides for the payment of severance benefits if the buyer of Ampex does not offer plaintiff:

> [A] position that is substantially equivalent to your current position. This deter-

---

**1.** All subsequent statutory references are to Title 29.

**2.** The Ninth Circuit upheld retroactive application of *Firestone* in *Orozco v. United Air Lines, Inc.*, 887 F.2d 949 (9th Cir.1989).

mination will be made by Allied–Signal upon consideration of whether the new position:

(i) has compensation and benefits with a value not less than 90% of your current compensation and benefits ...;

(ii) is located not more than 50 miles from your current work location; and

(iii) has responsibilities similar to those of your current position.

Conditions (i) and (ii) are undisputed by plaintiff. At the time of the sale of Ampex, plaintiff's salary was $125,000, with a bonus potential of $70,000. After the reorganization, plaintiff's new position had a salary of $150,000, with a bonus potential of $150,000. Both jobs were located at Ampex's Redwood City headquarters. The dispute is whether discretion is conferred upon Allied–Signal to determine if the positions have similar responsibilities; condition (iii).

■ Plaintiff is correct that language which only establishes an entity's right to administer or manage a plan does not confer discretion. *Firestone*, 489 U.S. at 111, 109 S.Ct. at 954. *Orozco v. United Air Lines, Inc.*, 887 F.2d 949, 952 (9th Cir. 1989); *International Brotherhood of Electrical Workers Local 47 v. Southern California Edison*, 880 F.2d 104, 108 (9th Cir. 1989). However, language in a plan which grants authority to the administrator to determine questions of eligibility and coverage is sufficient to demonstrate discretionary authority. *See e.g., Lakey v. Remington Arms Co.*, 874 F.2d 541, 544 (8th Cir. 1989) (severance pay plan permitted administrator "to interpret the more usual situations that may arise in the application of the principles of the [severance pay] policy"); *Richards v. United Mine Worker' Health & Retirement Fund*, 895 F.2d 133, 135 (4th Cir.1990) (independent trustees have the power of "full and final determination as to all issues concerning eligibility for benefits."). The Eleventh Circuit, in *Newell v. Prudential Ins. Co.*, 904 F.2d 644 (11th Cir.1990), upheld the application of the abuse of discretion standard to a group medical, health and accident policy:

The district court correctly concluded that because the Prudential plan ... gives Prudential some degree of discretion in determining whether charges would be deemed necessary and eligible, *Firestone* would sanction the continued application of the arbitrary and capricious standard to the instant case.

*Newell*, 904 F.2d at 650.

■ The terms of this plan provide that a determination of whether plaintiff has been offered "a position that is substantially equivalent to [plaintiff's] current position ... will be made by Allied–Signal upon consideration of whether the new position ..." That language does more than simply designate that Allied–Signal will be the administrator of the plan. It grants Allied–Signal the authority to evaluate and determine facts, including whether an employee's prior and prospective positions are "similar." This evaluation necessarily invokes a judgmental function in analyzing the positions. Under *Firestone*, this is sufficient evidence of a grant of discretionary authority. *Firestone*, 489 U.S. at 115, 109 S.Ct. at 956. Allied–Signal's decision to deny plaintiff the severance benefits may therefore be reversed only for an abuse of discretion. *See also, Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279 (9th Cir.1990).

■ Plaintiff urges that this conclusion should be modified because of what he construes to be a conflict of interests by Allied–Signal. However, *Firestone* teaches that a conflict of interests is only a "factor" in evaluating whether there was an abuse of discretion; it does not change the standard of review:

[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor[ ] in determining whether there is an abuse of discretion.'

*Firestone*, 489 U.S. at 115, 109 S.Ct. at 956 (quoting, Restatement (Second) of Trusts § 187, comment d (1959). This court discusses the claimed conflict factor below.

## C.

Under the "abuse of discretion" standard of review, defendants move for summary judgment on the ground that Allied–Signal's denial of severance benefits was based on a reasonable interpretation of the terms of the plan, and was supported by the fact record. Plaintiff objects that Allied–Signal acted arbitrarily and capriciously, and violated due process in denying his claim.[3]

Plan administrators act arbitrarily and in abuse of their discretion if they render a decision without any explanation, or construe or apply a plan in a way "that clearly conflicts with the plain language of the plan." *Johnson v. Trustees of W. Conf. of Teamsters Pension Trust Fund,* 879 F.2d 651, 654 (9th Cir.1989) (citing *Hancock v. Montgomery Ward Long Term Disability Trust,* 787 F.2d 1302, 1307 (9th Cir.1986)). Allied–Signal did explain its decision to plaintiff. The question is whether Allied–Signal arbitrarily construed and applied the terms of the plan. The record demonstrates that there are sufficient facts in the record for Allied–Signal to make the decision that it did, and this court cannot conclude that it acted arbitrarily or abused its discretion:

Plaintiff's original position was Vice President and General Manager of the Audio–Video Systems Division. After the reorganization, Ampex offered plaintiff the position of Vice President, Marketing, Sales and Service. The undisputed evidence shows that under both positions plaintiff was (1) a vice president, reporting directly to the chief executive officer; (2) a member of the Executive Management Committee; (3) responsible for directing a discrete section of the company, including responsibility for its personnel (*e.g.* selection, compensation, benefits, training and terminations), finances, facilities, informa-

tion systems, and implementation of corporate policies, and (4) responsible for directing sales, sales analysis, accounts receivable, servicing, and marketing services. Plaintiff's new position also continued his career path as a potential candidate for chief executive officer of Ampex. And compared to his position before the sale, plaintiff's annual salary increased from $125,000 to $150,000, and his bonus potential from $70,000 to $150,000.

Plaintiff argues that there were numerous differences between his former and new positions, and as a result of those differences, plaintiff came to view his new position as a demotion.[4] However, the fact that there were some differences between the two positions is insufficient for plaintiff to establish that Allied–Signal's finding of similarity was arbitrary or an abuse of its discretion. The language of the plan says a "similar" position, not an "identical" one. Even though plaintiff can point to differences, and his expert witnesses would agree, the above facts are a sufficient record for the administrator to make the decision that it did, under the discretion vested in it.

## D.

Did Allied–Signal have a conflict of interest which should be weighed in determining whether there was an abuse of discretion? Plaintiff contends that there was a conflict because Ampex was allegedly obligated to "indemnify" Allied–Signal for severance benefit payments.

Less deference is to be given to an administrator's decision, if the decision involved a "serious conflict" between the administrator and the employer. *Oster v. Barco of California Employees' Retirement Plan,* 869 F.2d 1215, 1217 (9th Cir. 1988). However, there is no evidence that Allied–Signal was financially liable for any

---

**3.** Plaintiff also asserts that he has produced substantial evidence to show that the new position was not substantially similar to his prior position, and that a triable issue is therefore raised about the reasonableness of Allied–Signal's exercise of discretion. However, showing substantial evidence is not enough when the standard of review is abuse of discretion.

**4.** Plaintiff also emphasizes the declaration of his expert witness, a managing director of an executive search firm, which concluded that the two positions did not have "responsibilities similar," as that term would be understood in the marketplace for corporate executive positions.

severance benefits after the sale of Ampex. To the contrary, as plaintiff alleges in his complaint, when Allied–Signal sold Ampex to Newhill Acquisition Corporation, "Ampex assumed the obligation for the payment to plaintiff of his benefits under the Plan."[5] Allied–Signal's decision to award or deny benefits would have no impact on Allied–Signal's finances. This court's review therefore remains deferential. *Fielding v. International Harvester Co.*, 815 F.2d 1254, 1256 (9th Cir.1987).

Allied–Signal's interpretation of the plan and denial of benefits to plaintiff was not an abuse of discretion. Defendants' motion for summary judgment on the first cause of action is therefore granted.

### IV.

Plaintiff's second claim is against Ampex alone, alleging that Ampex is estopped to deny severance benefits to plaintiff. Ampex contends that it is entitled to summary judgment on this claim for three reasons. First, estoppel cannot apply against Ampex because Ampex did not administer the plan and did not make the decision adverse to plaintiff. Second, an employee benefit plan cannot be required by estoppel to make payments that are inconsistent with the written plan. Third, there is no basis for estoppel because plaintiff admits that he resigned without seeking or receiving any assurance of his eligibility for benefits.

■ Defendant is correct that a plan may not be required by estoppel to make payments which are not authorized by the written plan. *Hansen v. Western Greyhound Retirement Plan*, 859 F.2d 779, 781 (9th Cir.1988). However, an employer could be estopped, because recovery against the employer who is not the administrator would not diminish the fund.

*Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149, 1155 (9th Cir.1986). *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir.1985). Plaintiff's estoppel claim names his employer Ampex, not the plan or its administrator, and is therefore properly pleaded.

■ However, to survive summary judgment, plaintiff must demonstrate a triable issue of fact on the following elements:

(1) the party to be estopped [Ampex] must know the facts; (2) [Ampex] must intend that [its] conduct shall be acted on or must so act that [plaintiff] has a right to believe it is so intended; (3) the [plaintiff] must be ignorant of the true facts; and (4) [plaintiff] must rely on [Ampex's] conduct to his injury.

*Ellenburg*, 763 F.2d at 1096.

It is undisputed that Ampex "knew the facts" of plaintiff's interpretation of the severance plan and his new position. The issues are what plaintiff knew and Ampex's intent. Plaintiff alleges that in conversations with Ampex Chief Executive Officer Max Mitchell, Mitchell agreed that plaintiff's new and old positions did not have "similar responsibilities." Plaintiff confirmed his understanding of these conversations with Mitchell in two letters which were sent to both Ampex and Allied–Signal.[6]

Plaintiff also alleges that on January 22, 1988, Mitchell accepted his resignation without disagreeing with his position that he was entitled to severance benefits. However, the January 22 letter contained no discussion of severance benefits. And plaintiff cannot claim that he resigned based upon any assurance by Ampex that he would get the severance benefits. He

---

5. *See* Complaint at ¶ 12.

6. Plaintiff's October 29, 1987 letter stated:
 [A]s we have agreed in several conversations over the past few weeks ... the new position is not "substantially equivalent" to my current position in that it does not entail "similar responsibilities."
 Plaintiff's January 7, 1988 letter of resignation:
 Prior to my taking the Marketing, Sales and Service position, we thoroughly discussed and

agreed that the role was vastly different in content and responsibility from that which I then held in [Ampex].
 After nearly four months of discussing the sales division concept with [Mitchell] ... *I have concluded that the role does not fulfill my expectations in terms of responsibility, management influence or opportunity to carry out real change at Ampex.* (emphasis added).

testified at his deposition that he did not expect a reply to his letters, but sent them to "reserve his rights." The letters from plaintiff are evidence of his intent, not Ampex's. Plaintiff cannot claim that because Ampex failed to respond it adopted his interpretation, with the intent of inducing him to rely on his own assertions. Moreover, the letters show that plaintiff was not ignorant of the true facts and was aware of the similarity issue. Plaintiff therefore cannot demonstrate the second and third elements required for estoppel. Summary judgment is therefore granted to Ampex on the second cause of action.

## V.

 Plaintiff's third claim alleges a violation of 29 U.S.C. § 1140 (1985). That statute provides:

It shall be unlawful for any person to ... discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ...

Plaintiff claims that after he resigned, Ampex discriminated against him by intentionally and in bad faith informing Allied–Signal that it had offered plaintiff substantially equivalent employment.

The legislative history of section 1140 reveals that it was directed at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights. *Lojek v. Thomas*, 716 F.2d 675, 680–61 (9th Cir.1983). No claim is stated under this statute unless the employee is affirmatively or constructively discharged. *Id.; accord Young v. Standard Oil (Indiana)*, 660 F.Supp. 587, 597 (S.D.Ind. 1987), *aff'd*, 849 F.2d 1039 (7th Cir.), *cert. denied*, 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988).

Plaintiff asserts that although section 1140 is "primarily" designed to prevent employers from discharging or harassing employees who seek benefits that, this is not its only purpose. However, the cases cited by plaintiff do not support this argument. *Conciatore v. Leahy's Fuel, Inc.*, 686 F.Supp. 383 (D.C.Conn.1988) has been withdrawn from publication [available on WESTLAW, 1988 WL 92931]. In *Furcini v. Equibank, NA*, 660 F.Supp. 1436 (W.D. Pa.1987), the court stated that a section 1140 claim for interference with severance pay "necessarily presupposes ... discharge." *Id.* at 1439. The *Furcini* court said that a discrimination action would be appropriate if it is based on the way the employer characterized the discharge *Id.;* but no such claim is made here.

 Plaintiff's section 1140 claim therefore fails because it is undisputed that he was not affirmatively or constructively discharged. He resigned.[7]

Plaintiff attempts to avoid that result by alleging discrimination and bad faith in the administration of the plan. Even if this allegation is actionable under section 1140, it is not supported by sufficient evidence to create a genuine issue of material fact. Plaintiff relies on two pieces of evidence. First, plaintiff construes a February 23, 1988 letter from Ampex's Secretary and General Counsel to Allied–Signal[8] as evidence of Ampex's intent to "intentionally and maliciously subject[ ] plaintiff to oppressive, cruel, and unjust hardship in conscious disregard of plaintiff's rights." This claim is answered by the letter itself. It is a matter-of-fact description of the relationship between Ampex and plaintiff after Ampex's reorganization. It contains no evidence of affirmative or constructive discharge, or any expression of "malice." Second, other Ampex executives were paid severance benefits even though they voluntarily resigned *after* the expiration date of the plan. However, a claim of a violation of section 1140 requires discrimination for exercising a right "under the provisions of an employee benefit plan." Ampex's conduct after expiration of the plan has no bearing on plaintiff's claim for discrimination in implementation of the plan. Defen-

---

7. *See* Letter from plaintiff to Mitchell, dated January 7, 1988: "I regret to inform you of my intention to resign from Ampex."

8. Decl. of Leflar, Ex. B.

dants are therefore granted summary judgment on the third cause of action.

## VI.

Plaintiff's fourth claim is under 29 U.S.C. § 1109 (1985), alleging that defendants breached their fiduciary duties by failing to pay benefits to which he was entitled under the plan.

 There are two defects in this claim. First, as discussed above, plaintiff is not entitled to severance benefits because Allied–Signal did not abuse its discretion in denying him benefits. Second, section 1109 does not give a right of action to individual beneficiaries of a plan, only to the plan itself. *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985). It does not convert every dispute over a claim for benefits into a breach of fiduciary duty if the claim is denied. Section 1109 was designed to protect the assets of the plan from the improper acts of those controlling those assets.

Plaintiff argues that *Russell* permits a participant to recover benefits from a fiduciary. Indeed; but that result was based on other statutes, not on section 1109, and the complaint does not allege violations of those other statutes.

Finally, plaintiff claims that he is entitled to relief under section 1109 on the grounds that it provides for "other equitable or remedial relief as the court may deem appropriate." However, as stated, the remedies run to the plan and not to the beneficiary. *Russell*, 473 U.S. at 144, 105 S.Ct. at 3091.

## VII.

 Plaintiff's brief in opposition to the summary judgment motion adds several arguments that plaintiff was denied due process. No claim for denial of due process is stated in the First Amended Complaint. However, even assuming that plaintiff's arguments are properly raised, the record demonstrates that plaintiff received the process that he was due.

ERISA requires written notice of the reasons why an application for benefits is denied, and a reasonable opportunity for a full and fair review of the denial by an appropriate fiduciary. 29 U.S.C. § 1133 (1985); *White v. Jacobs Engineering Group Long Term Dis. Ben. Plan*, 896 F.2d 344, 349 (9th Cir.1989).

Specifically, every employee benefit plan shall:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133; *see also* 29 C.F.R. § 2560.503–1(f) (1990).

It is undisputed that plaintiff received a copy of the plan in November 1986. After Ampex's reorganization, plaintiff informed Ampex of his position on severance benefits in a series of discussions during August through October 1987. Plaintiff's letter of acceptance stated in detail his view that the new position was not "substantially equivalent." His letter of resignation and letter to Allied–Signal reiterated his position. A follow-up letter was sent by plaintiff to Russell Hawkins at Allied–Signal on February 3, 1988. On February 23, 1988, Ampex wrote Allied–Signal, explaining its position on plaintiff's claim for benefits. Hawkins read Ampex's letter to plaintiff over the phone, and later sent plaintiff a copy. Hawkins informed plaintiff by phone on March 2, 1988 that his claim for severance benefits was denied, and that this decision was based on the February 23 letter from Ampex and plaintiff's letters of October 29, 1987, January 7, 1988, and February 3, 1988.

Allied–Signal's procedures were somewhat informal. However, the record shows that plaintiff received written notice in a manner calculated to be understood by him, setting forth the specific reasons for the denial of his claim, and with reference to

the pertinent plan provisions, as required by section 1133(1) and 29 C.F.R. § 2560.503–1(f). Plaintiff's own letters show that he understood the issues and the terms of the plan.

Plaintiff claims that he was denied a right of reconsideration. However, a March 8, 1988, letter from the plan administrator, addressed plaintiff's "appeal." The letter sets out in detail the reasons for the denial of plaintiff's claim. A further statement of plaintiff's position and a request for review was made by plaintiff's attorney on March 15, 1988. The administrator reviewed the letter and declined further reconsideration.

Plaintiff has received the "due process" required by section 1133 and 29 C.F.R. § 2560.503–1(f), and defendants are entitled to summary on that argument.

IT IS SO ORDERED.