Donald F. BOGUE, Plaintiff/Appellant,

v.

AMPEX CORPORATION and Allied–Signal, Inc.; Does 1–10, Inclusive, Defendants/Appellees.

No. 91–15038.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 1992.

Decided Oct. 7, 1992.

As Amended Dec. 2, 1992.

Bruce H. Munro, Stephen A. Dennis, Thoits, Love, Hershberger & McLean, Palo Alto, Cal., for plaintiff/appellant Donald F. Bogue.

Robert M. Westberg, James J. Walsh, John R. Leflar, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendants/appellees Ampex Corp. and Allied–Signal, Inc.

Before: WISDOM,* BEEZER, and TROTT, Circuit Judges.

WISDOM, Circuit Judge:

The plaintiff/appellant, Donald Bogue, seeks severance payments denied him by his former employer. The district court upheld that denial under the Employee Retirement Income Security Act ("ERISA").[1] We find that ERISA controls this case, supports the denial of benefits, and offers Bogue no other opportunity to challenge the decisions below. We AFFIRM, but decline to award attorney fees to the appellees.

## I. BACKGROUND

Donald Bogue was a Vice President of the Audio–Video Systems Division of Ampex Corporation, a Redwood City manufacturer of sound equipment. Allied–Signal owned Ampex between September 1976 and May 1987. During November 1986 Allied–Signal informed ten executives of Ampex (including Bogue) that it intended to sell Ampex. To retain those executives, at least temporarily, Allied–Signal established the "Allied–Signal/E & I Sector Special Compensation Program for Designated Key Executives".[2] The program provided for severance benefits if

neither Allied–Signal nor the Buyer [of Ampex] offers you "substantially equivalent" employment and your employment is terminated.

"[S]ubstantially equivalent employment" was defined as a job that included "responsibilities similar" to those while Allied–Signal still owned ·Ampex. Allied–Signal would determine whether the benefits were appropriate in each case. The program would end on March 31, 1988.[3]

Allied–Signal sold Ampex in May 1987. Ampex (through its new owner) assumed liability for paying severance benefits under the program. The new president of Ampex reorganized the business and offered Bogue a position as Vice President of Marketing, Sales & Service. He accepted the offer in the hope that it would help his career; he told Ampex, however, that he considered the position one that was not "substantially equivalent" to his old job. Citing the same complaint and seeking severance pay under the program, he resigned from Ampex in January 1988. Allied–Signal, which had obligated itself to administer the program after the sale of Ampex, denied Bogue's request for severance pay. It based that decision on Ampex's argument that Bogue's new position *was* substantially equivalent to his previous job.

Bogue later filed a lawsuit against Ampex and Allied–Signal in state court. The defendants successfully removed the case to federal court based on ERISA preemption; the district court denied Bogue's request for remand to state court, and later

* The Honorable John Minor Wisdom, United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. 29 U.S.C. § 1001, *et seq.*

2. Mindful of ERISA's language, Allied–Signal carefully refers to this program as the "Plan". Bogue is similarly careful to call it the "Program". We prefer "program" because that is the word used in November 1986 letters by Allied–Signal in describing to key executives its "Special Compensation Program for Designated Key Executives".

3. The program also provided for a "Stay Bonus" and a "Sale Price Incentive", neither of which are at issue here.

granted summary judgment in favor of Allied–Signal and Ampex. The district court concluded that Allied–Signal's denial did not abuse its fiduciary discretion, that no conflict of interest existed between Allied–Signal and Ampex that would require the court to apply a more stringent standard of review, and that Bogue had not made out a violation of 29 U.S.C. § 1140, which prevents an employer from intentional discrimination in depriving its employees of plan benefits.[4] Bogue appeals these decisions. The defendants "intend to seek attorney fees for the appeal"; we read that intent as a request for those fees.

## II. DISCUSSION

### A. ERISA Preemption

ERISA preemption[5] provides for the removal to federal court of lawsuits involving employee benefit plans. Because ERISA preemption is the sole basis of federal jurisdiction in this case we must decide whether the "Special Compensation Program for Designated Key Executives" is an "employee benefit plan" under ERISA.

■ ERISA preemption is notoriously broad, but several recent cases have held that it has reasonable limits. In the leading case on this question the Supreme Court held that ERISA did not preempt a state plant-closure law that provided for a lump sum severance payment, triggered by a single event that may never occur.[6] In *Fort Halifax* the Court found that such a law "simply creates no need for an ongoing administrative program for processing claims and paying benefits".[7] Bogue contends that the Allied–Signal severance payment program should be similarly exempt from ERISA preemption. It had a very short term (17 months); it applied only

contingently, *if* Ampex were sold, *and if* the employee were denied substantially equivalent work by the buyer; and it would apply only once to any individual employee. Allied–Signal contends that the program, by its own terms, required the sort of discretionary decision-making by the plan's administrator that is the hallmark of an ERISA plan. We agree with Allied–Signal. The program before us involved more than what *Fort Halifax* describes as "[t]he theoretical possibility of a one-time obligation in the future".[8]

Bogue finds support in the Fifth Circuit's post-*Fort Halifax* opinion in *Wells v. General Motors Corp.*[9] *Wells* held that the General Motors "procedure by which employees could elect to receive a one-time lump payment if they ceased working at the plant"[10] was not an ERISA plan. The Court found that

> [t]he plan was not ongoing, nor was there any need for continuing administration of the payment program.... The facts that GM made the payments pursuant to a Voluntary Termination of Employment *"Plan"* and that the employees received a benefit do not convert the plan into an "employee benefit plan" for purposes of ERISA.[11]

This language might suggest that the Allied–Signal program, because of its limited time frame, its contingency, and its one-time application to any affected employee, was not an ERISA plan. Considering Allied–Signal's concession that even it was unaware that the program might be subject to ERISA, Bogue's argument is not without merit. In finding that the program is susceptible to ERISA preemption, however, we choose to follow the approach of the Third Circuit in considering a severance plan similar to the program in this case,

---

4. The court made other conclusions irrelevant to this appeal.

5. ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan". 29 U.S.C. § 1144(a).

6. *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).

7. *Id.* at 12, 107 S.Ct. at 2217.

8. *Id.*

9. 881 F.2d 166 (5th Cir.), *reh'g en banc denied,* 887 F.2d 1083 (5th Cir.1989), *cert. denied,* 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990).

10. *Id.* at 176.

11. *Id.*

and a more recent Fifth Circuit case that narrows the broader implications of *Wells.*

In *Pane v. RCA Corp.*,[12] the Third Circuit held that a corporate severance agreement, instituted to keep key employees at work during the possibly lengthy consummation of a corporate merger, was an ERISA plan. The court stated simply, without further elaboration, that the severance agreement "required an administrative scheme".[13]

■ The reasoning of a recent Fifth Circuit case, *Fontenot v. NL Indus., Inc.*,[14] fleshes out the logic behind *Pane* by accurately describing the fence between cases involving real ERISA plans and cases such as *Fort Halifax. Fontenot* looks to whether the plan in question " 'require[s] an administrative scheme' because 'the circumstances of each employee's termination [have to be] analyzed in light of [certain] criteria' ".[15] We adopt this approach, which places the Allied–Signal program on the ERISA side of that fence.

In this case, Allied–Signal, the program's administrator, remained obligated to decide whether a complaining employee's job was "substantially equivalent" to his pre-acquisition job. Although the program, like the plans in *Fort Halifax* and *Wells*, was triggered by a single event, that event would occur more than once, at a different time for each employee. There was no way to carry out that obligation with the unthinking, one-time, nondiscretionary application of the plan administrators in *Fort Halifax* and *Wells.* Although its application was

uncertain, its term was short, and the number of its participants was small, the program's administration required a case-by-case, discretionary application of its terms. Whether or not Allied–Signal ever thought it would have to administer an ERISA plan does not matter; there was no way to administer the program without an administrative scheme. We hold that Allied–Signal was obligated to apply enough ongoing, particularized, administrative, discretionary analysis to make the program in this case a "plan".

Bogue contends that, even if the program is a "plan", it should not apply to him because he is not an employee of the plan's administrator, Allied–Signal.[16] The appellees contend that, because Ampex assumed liability for a program established and administered by Ampex, the program *is* maintained by Bogue's employer.

■ Bogue cites cases holding that controlling shareholders cannot be personally liable for damages under a plan maintained by the corporation they control; he contends that a shareholder, like Allied–Signal, can never be an "employer" under ERISA.[17] The appellees note that ERISA defines the term "employer" broadly.[18] They argue that a benefit program established by a parent corporation for the employees of its wholly owned subsidiary should not be removed from ERISA's coverage simply because their corporate structure might seem to divide the two companies. We agree. When a corporation establishes an employee benefit plan for the

---

**12.** 868 F.2d 631 (3d Cir.1989).

**13.** *Id.* at 635.

**14.** 953 F.2d 960 (5th Cir.1992).

**15.** *Id.* at 962–63 (quoting *Pane v. RCA Corp.*, 667 F.Supp. 168, 170–71 (D.N.J.1987)).

**16.** 29 U.S.C. § 1002(1) defines an employee benefit plan as one "established or maintained by an employer".

**17.** Without discussing the issue, two Second Circuit cases have applied ERISA to benefits established by parent corporations for employees of subsidiaries. *See Reichelt v. Emhart Corp.*, 921 F.2d 425, 427–28 (2d Cir.1990), *cert. denied,* ——

U.S. ——, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991); *Accardi v. Control Data Corp.*, 836 F.2d 126, 127–28 (2d Cir.1987).

**18.** Allied–Signal also argues that it was Bogue's employer under ERISA when it established the program because it was acting in the interest of his employer, Ampex. 29 U.S.C. § 1002(5) provides that "[t]he term 'employer' means any person acting directly as an employer, *or indirectly in the interest of an employer,* in relation to an employee benefit plan ..." (emphasis added). Allied–Signal established the program in order to make Ampex more attractive to a potential buyer. Although this goal involved a level of self-interest to Allied–Signal, it cannot be said that it was *not* done in the interest of Ampex.

employees of its wholly owned subsidiary and retains the duty to administer that plan, and when the subsidiary bears the financial burden of funding it, the plan is "established or maintained by an employer" and is accordingly controlled by ERISA.

### B. Standard of Review

■ After deciding that the program's administrative discretion entails ERISA preemption, a related question follows: Does a federal court review Allied–Signal's decision that Bogue was not entitled to severance pay *de novo* or only for an abuse of discretion? [19]

Bogue argues that the district court incorrectly applied an abuse of discretion standard in this case. The standard by which we review benefit decisions depends on the amount of discretion that the plan vests in its administrator. The Supreme Court has held that

a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.[20]

The Allied–Signal program provides for severance payments if the buyer of Ampex does not provide the employee with "substantially equivalent employment":

The determination of "Substantially equivalent" position will be made by Allied–Signal upon consideration of whether the new position:

(i) has compensation and benefits with a value not less than 90% of your current compensation and benefits ...;

(ii) is located not more than 50 miles from your current work location; and

(iii) has responsibilities similar to those of your current position.[21]

The full extent of the program's discretion, therefore, lies in the phrase "[t]he *determination ... will be made by Allied–Signal* upon consideration of whether the new position ... has responsibilities *similar to those of your current position*".[22]

The language of the plan in this case is virtually indistinguishable from language recently interpreted by this Court. In *Eley v. Boeing Co.*,[23] we considered a health plan whose administrator "shall determine the eligibility of a person for benefits under the plan" and stated that the administrator "retains final authority and responsibility for the Plan and its operation."[24] As in *Eley*, the program stated that Allied–Signal would make the determination of eligibility for benefits, and the program clearly placed on Allied–Signal the ultimate responsibility for funding those benefits.[25] We find that the program imposes on Allied–Signal, "the administrator[,] ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan".[26]

**19.** We review the district court's summary judgment *de novo,* of course. *Kruso v. Int'l Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). The question here is what standard of review should be applied by any federal court in reviewing the plan administrator's decisions.

**20.** *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).

**21.** Allied–Signal/E & I Sector Special Compensation Program for Designated Key Executives: *Severance Pay* 1–2.

**22.** *Id.* (emphases added). Obviously, the determinations of salary level and geographical location confer no discretion on the administrator. Only the meaning and effect of "substantially

equivalent" and "responsibilities similar" are at issue.

**23.** 945 F.2d 276 (9th Cir.1991).

**24.** *Id.* at 278 n. 2.

**25.** It provided that "Allied–Signal will make up the difference between the buyer's severance pay program and" 18 months' pay. Bogue concedes that, in spite of Ampex's assumption of liability for the program, Allied–Signal remained ultimately liable in case Ampex defaulted. There is no question that the program placed on Allied–Signal (as it placed on the administrator in *Eley*) the "final authority and responsibility" for its operation.

**26.** *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956; *see Eley,* 945 F.2d at 278.

Language that establishes only an entity's right to administer or manage a plan does not confer discretion.[27] Nevertheless, we agree with the district court that the language in the Allied–Signal program

> does more than simply designate that Allied–Signal will be the administrator of the plan. It grants Allied–Signal the authority to evaluate and determine facts, including whether an employee's prior and prospective position are "similar". This evaluation necessarily invokes a judgmental function in analyzing the positions. Under *Firestone*, this is sufficient evidence of a grant of discretionary authority.[28]

We do not want to encourage an employer to insulate himself from effective appellate review through the abuse of vague phrases that fail to make clear to the employees that the employer will have the final determination of benefit decisions. Employees who lose promised benefits should not lose the additional benefit of judicial review because their employer reserved discretionary power to itself without making that reservation clear. But when a plan includes even one important discretionary element, and the power to apply that element is unambiguously retained by its administrator, we may not second-guess the exercise of that discretion. The program's beneficiaries were on notice that Allied–Signal had such discretion over determining whether their responsibilities were substantially reduced; we can reverse the exercise of such discretion only when it has been abused.

## C. Conflict of Interest

■ Before arguing that Allied–Signal *did* abuse its discretion, Bogue asks us to impose a more stringent *version* of the

abuse of discretion standard because a conflict of interest existed between the administrator and the beneficiary. This Court has confirmed that less deference applies when the administrator's decision involves a "serious conflict" between the administrator and the employee.[29] *Bruch* itself directs the courts to take into consideration any conflict of interest in looking for an abuse of discretion.[30]

■ Bogue contends that such a conflict existed between him and both Ampex (which would have had to fund his severance pay) and Allied–Signal. The district court in this case found no such conflict because Ampex did not make the benefit decision, and because Allied–Signal's decision had no effect on its own finances.[31]

We disagree with the district court, but we affirm its result even under the less deferential standard of review. We find that there were, in fact, two conflicts of interest in this case. First, there was the risk that Ampex might not reimburse Allied–Signal for any severance pay that the latter awarded to Bogue from an unfunded plan. As we noted above, Allied–Signal's indemnification agreement with Ampex did not relieve it of its primary responsibility to Bogue and his fellow employees. Second, and more important, there was Allied–Signal's dependence on Ampex for information about the similarity between Bogue's old and new responsibilities. It was obviously in the financial interest of Ampex to recommend against an award of severance pay that it would have to fund.

We disagree with Bogue's argument that these conflicts of interest poisoned Allied–Signal's decision about the similarity of his old and new jobs. Bogue quotes a letter from Ampex advising Allied–Signal to deny

27. *Bruch,* 489 U.S. at 111, 109 S.Ct. at 954; *Orozco v. United Air Lines, Inc.,* 887 F.2d 949, 952 (9th Cir.1989); *International Bhd. of Elec. Workers Local 47 v. Southern Cal. Edison Co.,* 880 F.2d 104, 108 (9th Cir.1989).

28. *Bogue v. Ampex Corp.,* 750 F.Supp. 424, 428 (N.D.Cal.1990).

29. *Oster v. Barco of Cal. Employees' Retirement Plan,* 869 F.2d 1215, 1217 (9th Cir.1988). Be-

cause the great deference accorded a plan administrator arises in part from the assumption of trust law that the trustee has no pecuniary interest in his decisions, proof that the trustee *does* have such interest correspondingly strengthens the court's level of review.

30. 489 U.S. at 115, 109 S.Ct. at 956.

31. *Bogue,* 750 F.Supp. at 429–30.

Bogue's claim for severance pay. He finds in that letter conclusive evidence that a conflict of interest in both Ampex and Allied–Signal caused the denial of his claim. Allied–Signal did, apparently, rely on Ampex's characterization of Bogue's new job. Ampex, in turn, had a strong incentive (its wallet) not to recommend severance pay for Bogue. Nevertheless, in reviewing the record we find that Allied–Signal's decision to deny severance pay to Bogue not only satisfies the less deferential abuse of discretion standard of review; its decision was fully consistent with the plain language of the program.

**D. Did Allied–Signal Abuse its Discretion?**

■ The difference between Bogue's pre-acquisition and post-reorganization jobs at Ampex are in some practical respects great, but they involve very comparable levels of responsibility within the corporation. Allied–Signal did not abuse its discretion in finding the two jobs substantially equivalent. The district court's findings of fact say it all:

> Plaintiff's original position was Vice President and General Manager of the Audio–Video Systems Division. After the reorganization, Ampex offered plaintiff the position of Vice President, Marketing, Sales and Service. The undisputed evidence shows that under both positions plaintiff was (1) a vice president, reporting directly to the chief executive officer; (2) a member of the Executive Management Committee; (3) responsible for directing a discrete section of the

company, including responsibility for its personnel (*e.g.* selection, compensation, benefits, training and terminations), finances, facilities, information systems, and implementation of corporate policies; [sic] and (4) responsible for directing sales, sales analysis, accounts receivable, servicing, and marketing services. Plaintiff's new position also continued his career path as a potential candidate for chief executive officer of Ampex. And compared to his position before the sale, plaintiff's annual salary increased from $125,000 to $150,000, and his bonus potential from $70,000 to $150,000.[32]

The district court concluded that Allied–Signal did not abuse its administrative discretion in denying Bogue severance payments. Although we apply a somewhat stricter standard of review to account for conflicts of interest between Ampex and Allied–Signal, we reach the same conclusion.

Because the district court's conclusion is irrefutable, Bogue appends a due process argument under ERISA; he contends that Allied–Signal failed to comply with ERISA's reporting and disclosure requirements. The defendants concede that Allied–Signal may have made some procedural violations, but they contend that Bogue has not met his requirement of showing that any procedural defects caused him substantive harm or involved a substantive violation of ERISA.[33] They are correct.

**E. Anti–Discrimination Under ERISA**

■ Bogue seeks alternative relief under ERISA's antidiscrimination provision;[34] he

---

**32.** *Id.* at 429.

**33.** In *Hancock v. Montgomery Ward Long Term Disability Trust,* 787 F.2d 1302, 1308 (9th Cir. 1986) (citations omitted), *disapproved on other grounds, Bruch,* 489 U.S. 101, 109 S.Ct. 948, this Court wrote:
> Substantive remedies are available for procedural defects under ERISA only when the defects "caused a substantive violation or themselves worked a substantive harm."

In *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1353 (9th Cir.1984), *cert. denied,* 474 U.S. 865,

106 S.Ct. 183, 88 L.Ed.2d 152 (1985), a case relied on by Bogue, this Court noted that
> [o]rdinarily, a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy.

**34.** 29 U.S.C. § 1140 provides:
> It shall be unlawful for any person to ... discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ....

alleges that Ampex violated that law by urging Allied–Signal to deny his claim for severance pay. He would find proof of discrimination against him in Ampex's admission that it provided severance pay to several executives who resigned after the program had ended. The district court held that 29 U.S.C. § 1140 does not apply unless the employee is actively or constructively discharged. Bogue notes that the language of § 1140 is not so limited. This Court has considered his argument, however, and refuted it.[35] Bogue offers no evidence that he was discharged.

█ The district court correctly found that Bogue had voluntarily resigned. His allegations of payments made to other executives are irrelevant because § 1140 prevents discrimination only "under the provisions of an employee benefit plan". It therefore does not apply to payments made voluntarily by Ampex after the program had terminated. The court also found, correctly, that Ampex's letter of recommendation to Allied–Signal was nothing more than a "matter-of-fact description of the relationship between Ampex and plaintiff after Ampex's reorganization". Bogue's only legal support for his discrimination charge is the letter Ampex sent Allied–Signal. That charge was properly dismissed.

## F. Attorney Fees

ERISA allows us to award attorney fees to either party for costs incurred in bringing an appeal.[36] Although Bogue does not prevail here, we find that his appeal was not brought in bad faith; that the defendants are as able as he to bear the cost of their attorney fees; that an award of fees against him would not discourage others from raising appeals more frivolous than his; and that the parties' positions were relatively equal in merit.[37] For those reasons we refuse to charge him with the defendants' attorney fees for this appeal.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the district court's order granting summary judgment in favor of the defendants. The defendants' request that we impose on Bogue their attorney fees for this appeal is DENIED.

**35.** *See Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 881 (9th Cir.1989) ("[T]o establish a violation under § 1140, a plaintiff-employee must show that his [exercise of rights under the benefit plan] was the motivating force behind his discharge."), *cert. denied,* ── U.S. ──, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990); *Lojek v. Thomas,* 716 F.2d 675, 680–81 (9th Cir.1983); *see also Kuntz v. Reese,* 760 F.2d 926, 933 (9th Cir.1985) ("[§ 1140] does not apply in cases, such as the one before us, in which the employees are not discharged."), *withdrawn on other grounds,* 785 F.2d 1410 (9th Cir.), *cert. denied,* 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986).

**36.** *See* 29 U.S.C. § 1132(g)(1).

**37.** This Court has outlined five factors to be measured in deciding whether to award attorney fees to a prevailing party in an ERISA case. Those factors are:
(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.
*Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980). We have relied on factors one, two, three, and five in reaching our conclusion. Factor four seems inapplicable here. Although it weighs against Bogue in that he seeks a benefit only for himself, the factor seems to apply only when a prevailing *plaintiff* seeks attorney fees; ERISA's provision for such an award recognizes that a case brought by such a plaintiff often benefits a large group of others in similar situations.