George CORBARI, Plaintiff,

v.

ST. JOSEPH'S OMNI HEALTH PLAN, Defendant.

Civ. No. S–97–1588 DFL GGH.

United States District Court,
E.D. California.

Oct. 16, 1998.

Christopher E Purcell, Law Office of Christopher E. Purcell, Laguna Niguel, CA, for plaintiff.

William J. Taylor, Chilvers and Taylor, Emeryville, CA, for defendant.

### MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

Defendant Omni Healthcare, Inc. moves for summary judgment on plaintiff George Corbari's ERISA claim.

### I.

Corbari began working at James Gaskets, Inc. in Modesto in 1993. At that time, he was enrolled in an Omni Healthcare health plan through James Gaskets. (*See* G. Corbari Decl., ¶¶ 2–3.) Corbari was a full-time salaried employee of James Gaskets. (*See* Clark Decl., ¶ 2.)

After his hire in 1993, Corbari lived in a trailer on James Gaskets' premises. (*See* Clark Decl., ¶ 2.) When the company moved to another location in Modesto in 1994, Corbari bought a larger trailer and moved to a Modesto trailer park with his wife. (*See* G. Corbari Decl., ¶ 6.) Corbari also owned a house in Orange County dur-

ing this time. (*See* G. Corbari Decl., ¶ 9.) In May 1996, he decided that he could not afford to maintain two residences. (*See id.*) He asked James Clark, the owner of James Gaskets, if he could temporarily relocate to southern California in order to sell his house, and Clark agreed. (*See id.*) It was also agreed that while Corbari was in Southern California, he would be paid by commission only. (*See* Clark Decl., ¶ 3.) This agreement was open ended as to time. Moreover, it was uncertain whether James Gaskets would be remaining in Modesto or relocating to Nevada at some point in the future.

Corbari moved his trailer to southern California on June 27, 1996. (*See* G. Corbari Decl., ¶ 9.) Throughout June and July he traveled between Orange County and Modesto. (*See id.*, ¶ 10 & Exh. A.) On August 18, he suffered an aneurysm in his leg and was taken to a hospital in Newport Beach. (*See id.*, ¶ 13.) Upon admission to the hospital, Corbari listed Huntington Beach rather than Modesto as his address on the admission form. (*See* Raymond Decl., ¶ 16.) When plaintiff's wife Linda Corbari called James Clark to check on Corbari's health insurance, Clark promised to contact the health plan and make sure that the hospitalization was covered. (*See* Clark Decl., ¶ 4.) Clark called David Stull, an employee of Omni, who assured Clark that the Omni plan covered employees who were temporarily out of Omni's service area.[1] (*See id.*) On September 12, Stull wrote Clark a letter to assure him that Omni would cover Corbari's hospitalization. (*See id.*)

Shortly after Corbari was admitted, a social worker told him that an Omni representative had called the hospital, and that an ambulance would be coming to take him

1. Defendant's service area includes the entirety of Amador, Calaveras, Colusa, Del Norte, El Dorado, Glenn, Humboldt, Lake, Marin, Sacramento, San Francisco, San Joaquin, San Mateo, Santa Clara, Sonoma, Stanislaus, Sutter, Tuolumne, Yolo and Yuba counties; selected ZIP codes in Butte, Nevada and Placer counties; the cities of Dehi, Gustine, and Hilmar in Merced County; and the cities of Dixon, Isleton and Rio Vista in Solano County. (*See* Raymond Decl., Exh. B at Attachment 2.) The parties agree that Modesto is in defendant's service area and Orange County is not. (*See* Plaintiff's Response to Defendant's Statement of Undisputed Facts, Fact 15.)

to Modesto. (*See* G. Corbari Decl., ¶ 14.) Corbari asked that the move be postponed so that he could obtain information from the doctors who had been treating him and speak to his family. (*See id.*) The social worker later told Corbari that Omni had agreed to reschedule the move to Modesto to an unspecified future date. (*See id.*) Corbari asserts that Omni made no further attempts to transfer him to Modesto. (*See id.*, ¶ 16.)

On September 9, 1996, Corbari's leg was amputated in Newport Beach. (*See* G. Corbari Decl., ¶ 15.) That same day, Clark wrote a letter to Stull in which he stated that Corbari had "moved to Southern California as the Company's Commissioned Sales Service Representative for its OEM Division." Clark did not mention that the move and change in Corbari's salary status were temporary. (*See* Raymond Decl., Exh. E.) On September 18, Stull called Clark and accused him of attempting to defraud the health plan by enrolling an employee who lived outside the service area and was not a qualified salaried worker. (*See* Clark Decl., ¶ 5.) Stull told Clark that Omni believed that Corbari had never resided in the service area or been a salaried employee of James Gaskets. (*See id.*) Clark responded in a letter the same day, stating that the changes to Corbari's employment status and residence were "recent." (*See* Raymond Decl., Exh. F.) He still did not mention that Corbari's residence and salary status were temporary;[2] in fact, to the contrary, Clark wrote that Corbari had "wish[ed] to move back to his residence in Huntington Beach" in order to eliminate the costs of maintaining two residences. (*See id.* at 2). Omni sent Corbari a letter on September 30 terminating Corbari's coverage retroactive to June 1, 1996, on the grounds that he had become ineligible for coverage because he no longer lived or worked in Omni's service area and was not a salaried employee. Corbari filed this ERISA action in response.

## II.

A court reviewing a benefits decision under ERISA must determine three things: first, the proper standard of review; second, the scope of that review; and third, whether the decision itself was correct.[3]

### A. Standard of Review

■ A determination denying benefits under an ERISA plan is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). If the plan gives discretionary authority to the administrator, the exercise of that discretion is reviewed under the abuse of discretion standard. *See Snow v. Standard Ins. Co.*, 87 F.3d 327, 330 (9th Cir.1996); *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1471 (9th Cir.1993).

■ "[L]anguage that establishes only an entity's right to administer or manage a plan does not confer discretion." *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1325 (9th Cir.1992). The Ninth Circuit, however, has "not been stingy" in finding discretion. *Snow*, 87 F.3d at 330. "[W]hen a plan includes even one important discretionary element, and the power to apply that element is unambiguously retained by its administrator," discretion has been given. *Bogue*, 976 F.2d at 1325.

■ Omni points to two provisions of its Group Service Contract which it claims

---

**2.** In his declaration in support of plaintiff, Clark contends that he did not mention the temporary nature of plaintiff's move to Southern California in his August 18 letter because it "was not relevant to the charges that Mr. Stull had made." (Clark Decl., ¶ 5.)

**3.** Omni does not contend that its health plan is not governed by ERISA.

give the plan administrator discretion under *Bogue* and *Snow*. First, it cites § 1.4 of the GSC, which provides that "Omni shall have the right to establish reasonable requirements for proof of eligibility." (*See* Raymond Decl., Exh. B at 3, § 1.4.) Defendant argues that this section, like the plan in *Snow*, "gives the plan administrator the power to determine what constitutes satisfactory or reasonable proof of requirements for eligibility." (Defendant's Motion at 14:6–7.)

The text of the section, however, only gives Omni the right to establish reasonable requirements, not to determine in its discretion whether those requirements have been met in any particular case. This is not the "discretion" contemplated in *Snow* or *Bogue*. *See Snow*, 87 F.3d at 330 (discretion exists where plan administrator was given power to award benefits when "presented with what *it* consider[ed] to be satisfactory written proof"); *Bogue*, 976 F.2d at 1325 (discretion exists because plan allows administrator to "evaluate and determine facts" on a case-by-case basis and exercise "judgmental function").

Omni also cites § 6.3 of the GSC, but that section does not create discretion either. Section 6.3 provides that "Omni may adopt reasonable policies and procedures to help in the administration of the Contract." (*See* Raymond Decl., Exh. B at 11, § 6.3.) *Bogue* makes clear that provisions addressing the smooth administration or management of a plan do not qualify as grants of discretion, *see Bogue*, 976 F.2d at 1325, and § 6.3 is specifically aimed at enhancing the administration of the entire contract. It confers no discretion to evaluate claims on a case-by-case basis.

For these reasons, the court will review the benefits decision *de novo*.

### B. Scope of Review

■ Omni argues that the court's review should be limited to the administrative record, while Corbari contends that new evidence should be considered. In *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938 (9th Cir.1995), the Ninth Circuit held that a district court may consider new evidence when reviewing a benefit decision *de novo*. The court qualified its holding by noting that "a district court should not take additional evidence merely because someone at a later time comes up with new evidence that was not presented to the plan administrator," but only "when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review." *Id.* at 944 (*quoting Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1025 (4th Cir.1993) (en banc)). *De novo* review was necessary in *Mongeluzo* to conduct an adequate review because the original hearing had been conducted under a misconception of law. *See id.*

In this case, however, there was no "administrative hearing." Upon receiving proof that Corbari no longer resided in Modesto, Omni terminated his benefits entirely, without asking for any additional evidence. In *Quesinberry*, the court held that admission of new evidence may be justified by "the availability of very limited administrative review processes with little or no evidentiary record" or "circumstances in which there is additional evidence that the claimant could not have presented in the administrative process."[4] *Quesinberry*, 987 F.2d at 1027. Both justifications apply here. Corbari was not given the opportunity to have his claim reviewed by Omni's Grievance Committee or build an evidentiary record. If Omni had permitted him to do so, he would certainly have introduced evidence at least about the temporary nature of his move to

---

4. Other circuits have directly held that *de novo* review under ERISA includes facts not before the plan administrator. *See Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1098–99 & n. 4 (7th Cir.1994); *Luby v. Teamsters Health,* *Welfare and Pension Trust Funds*, 944 F.2d 1176, 1180 (3d Cir.1991); *Moon v. American Home Assurance Co.*, 888 F.2d 86, 89 (11th Cir.1989).

Southern California. Omni insists that Corbari knew that his eligibility for the Omni plan was "under review," but it offers no evidence to support this assertion. At the very least, Omni never formally notified Corbari of the review or of his right to submit additional evidence.

Because Corbari was not given the opportunity to introduce favorable evidence before his coverage was terminated, the court will consider new evidence as part of its *de novo* review of the benefits decision. *See Quesinberry*, 987 F.2d at 1027.

### C. The Decision to Terminate

Omni's decision to terminate was based on two facts. First, it appeared that Corbari had moved to Orange County and no longer resided within its service area. Second, after his move to Orange County, Corbari was paid solely by commission and was no longer an "employee" for the purposes of the Omni plan.[5]

■ Corbari asserts that he never intended to remain in Orange County, and that he was a permanent resident of Modesto in July and August of 1996 despite his presence in Orange County during that period. (*See* G. Corbari Decl., ¶ 9.) The Omni plan does not provide a definition of "resident" or "permanent resident." The plan does, however, discuss the scope of emergency care that will be provided to plan participants. An Omni participant who is "temporarily outside the service area" is "covered for unforeseen illnesses or injuries on an inpatient or outpatient basis." (Raymond Decl., Exh. A at 4.)

The "temporarily outside the service area" language appears to address those situations where an employee is on vacation or on a business trip. An employee who is reassigned indefinitely outside the

service area cannot fairly be said to be "temporarily" outside the area as this language is used in the Omni plan. At the time of his move to Orange County, Corbari had no defined plans to return to Modesto. He could have remained in Orange County for several years before he was able to sell his property. There is no evidence that a sale of the property was imminent at the time he was hospitalized. There was no fixed time set for his return. Nor did he have any house or trailer to return to in Modesto.

Moreover, James Gaskets was considering a move to Nevada at the time of Corbari's move. (*See* Clark Decl., ¶ 3.) James Clark had asked Corbari to move to Nevada with the company, and Corbari had agreed to do so. (*See id.*) If the move had been accomplished while Corbari was in Orange County, Corbari would never have returned to Modesto; he would have moved directly to Nevada after the property had been sold. Corbari's tenuous connection with Modesto depended entirely on James Gaskets' presence there. Omni did not agree to provide coverage under such circumstances. On these facts, Corbari was not eligible for emergency coverage in Orange County because he was not "temporarily outside the service area" under the terms of the Omni plan.

■ Even if Corbari could qualify for emergency care under the terms of the plan notwithstanding his residence, Omni was justified in terminating his coverage because he was no longer a salaried employee. The Omni plan states explicitly that "[i]ndividuals who are compensated by commissions . . . are not defined as Employees," and are thus not eligible for coverage. No exception is made for employees who are only "temporarily" paid by

5. For purposes of the plan, "[i]ndividuals who are compensated by commissions or on the basis of contracts or subcontracts with employer are not defined as Employees." (Raymond Decl., Exh. A at 21.) Corbari could have been insured under the Omni plan as a Designated Non–Employee, "who are com-

pensated by commissions . . . [and] to whom Omni and employer have agreed to extend eligibility for Omni membership." (*Id.*, Exh. A at 20.) There is no evidence that Corbari was such an employee, however, and Corbari does not argue that he was.

commission. Instead, the plan covers commissioned workers only where Omni and the employer specifically agree to extend membership. "Such individuals ... must be designated in the Group Service Contract." (Raymond Decl., Exh. A at 20.) Omni's duty to provide coverage to commissioned workers is limited to this narrow class of employees. James Gaskets did not designate Corbari as a covered commissioned worker in its GSC when Corbari moved to Orange County, and so Omni had no duty to provide coverage for him at that point.

Omni's motion for summary judgment is GRANTED. The clerk of the court is directed to enter judgment accordingly.

IT IS SO ORDERED.